**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOSEPH HAMMOND,**

      **Petitioner,**                  **CASE NO. 2:09-CV-202**
                                     **JUDGE MICHAEL H. WATSON**
**v.**                          **MAGISTRATE JUDGE E.A. PRESTON DEAVERS**

**MICHAEL SHEETS, WARDEN,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Following a competency hearing, R.F. testified to the following. R.F. was five years old in July 2006. (Tr. 49.) R.F. testified that she knew appellant and that she had gone to Magic Mountain with him that summer. (Tr. 49, 51.) The night before a family reunion, R.F. spent the night at appellant's house for a sleep over with her cousins, Elias and E.J. (Tr. 52-53.) In the morning, appellant helped Elias and E.J. get a shower. Then, appellant helped R.F. get her shower. (Tr. 54.) When asked if anything happened before her shower, R.F. responded as follows: "[h]e put his pee pee on mine," and indicated that it hurt. (Tr. 55-56.) R.F. testified that this took place on the floor in the bedroom.

She testified further that she knew her "pee pee" was her vagina and that appellant's "pee pee" was his penis. (Tr. 55-56.) After that, appellant helped R.F. take her shower. (Tr. 56 .)

Detective Kevin Foos from the Franklin County Sheriff's Office interviewed appellant regarding the above allegations on July 12, 2006. Detective Foos testified that he reviewed the constitutional rights waiver form with appellant, made sure that he understood it, and that appellant waived his right to an attorney. (Tr. 65-68.) Detective Foos also testified that he did nothing to encourage, threaten, or coerce appellant in any way. (Tr. 70.) Appellant made a written statement which was attached as exhibit B. Appellant first wrote out the following statement:

On the day in question, I was the one giving all 3 kids a shower. I gave E.J. and Elijah their showers, with no problems. Now with [R.F.], I thought that my wife should give her a shower. However since we were in a hurry and she was my cousin, I did. I did so out of the love of my heart, wanting to make sure that she along with [the] boys were clean and didn't smell bad at our family reunion. I am sorry for anything that may have been misconstrued as inappropriate. I would never hurt my family purposefully in anyway, malicious or not.

Thereafter, Detective Foos asked appellant to expound on the above statement and appellant wrote the following:

But on the day in question I for some unknown reason did what something in my head told me to. While getting [R.F.] ready to get in the shower, I did have her lay on the air mattress and proceed to have sex with her. It at first started out as just a visual check for fecal matter to see if we needed to pay extra attention to her behind as I have to do with Elijah. That's when something in my head said go for it have sex with her. However, while doing so I realized what I was doing and immediately stopped. I took [R.F.] into the bathroom and gave her a shower just as I did with E.J. before her and Elijah after. After the shower for the kids, it was my turn. When I was done with my shower we went to the Family Reunion[.][O]nce at the family reunion we ate, played games, then went home. I don't

2

know what made me do this bad thing to a little girl who I care for so deeply as a part of my extended family, but I can assure whoever may read this document that I will never do anything of this nature again. Also to be sure that I never do it again, I would like to formally ask for help with my problem. So I may put this part of my life behind me and be there for my wife and our unborn child, as well as apologize and make amends for what I've done. I am not an evil person, I just made a really bad mistake and would like to do what I can to help make [R.F.]'s time from here on as good as it can be, without anymore problems such as the one in question. I truly am sorry and wish I could go back to that moment in time, so that I could tell myself not to go through with it so that a little girl's life wasn't ruined. But now I have ruined both of our lives and neither one of us will ever be the same. Again, I did not set out to hurt [R.F.], something told me to and unfortunately I listened. I am very, very sorry.

Detective Foos also videotaped appellant and appellant essentially reiterated the above statements orally. This recording was played for the jury. (Tr. 78-88.) During that interview, appellant specifically stated that he had "sexual intercourse with [R.F.] on the air mattress," and that, "while she was laying on the air mattress, I took and I lifted up the leg of my shorts and proceeded to enter my penis into her vagina." Appellant stated that his penis "barely went in." (Tr. 86.) And, when asked how many times he thought he put his penis into her, appellant responded as follows: "I don't know, two or three." "Maybe three or four, but then I finally realized what I was doing, and I stopped ." (Tr. 87.)

Appellant testified at trial and indicated that he arrived at the police station at approximately 3:30 p.m., and that he did waive his right to an attorney. (Tr. 115.) Thereafter, Detective Foos told him what R.F. had said and asked appellant if he knew anything about it. (Tr. 116.) Appellant stated that Detective Foos had the case file with him and it contained information concerning the allegations. Appellant stated that Detective Foos showed him these documents. (Tr. 116-117.) Thereafter, appellant indicated that he wrote out the confession and that, when Detective Foos asked him to elaborate on the

statements he had already made, that he wrote out the remainder of the confession which had been presented as exhibit B. (Tr. 117-119.) Appellant also testified to the veracity of the recording of his confession which had been played for the jury. (Tr. 119.) Thereafter, appellant was asked why he confessed to raping R.F. when he was now indicating that the event did not occur. Appellant stated as follows: "Unfortunately it seemed like the right thing to do at the time. * * * Maybe I'm not describing it properly, but having not been in trouble with the law before, I did not know what to do in that situation." (Tr. 119-120.) Thereafter, the following exchange took place between counsel and appellant:

[Counsel] Let me ask it another way. Did you, in fact, pull out your penis and insert it into [R.F.]'s vagina two or three or four occasions as you indicated to the investigator?

[Appellant] No, sir, I did not. When he asked me that question I don't know if-well, when we heard the tape I didn't hear it. I actually told him I did not know, and then I just blurted out a number.

[Counsel] Well, the question is did you, in fact, have sexual intercourse with this child?

[Appellant] No, sir.

[Counsel] And that brings up the next question. Why in the world would you admit to having sex with this child in writing and on that tape if it didn't happen?

[Appellant] For a couple of reasons. The first because again, not having ever been in trouble of any kind, I had no idea what was going on, what was expected of me, what I was to say, and then when I was in the investigation room and was being questioned around the same time that I was writing the statement I actually did have the case file there and it was shown to me, and that is, in fact, where I got these facts from.

 (Tr. 120.)

4

*State v. Hammond,* No. 07AP-205, 2007 WL 3261510, *1 - *3 (Ohio App. 10th Dist. Nov. 6, 2007).  A jury found Petitioner guilty of rape.  The trial court imposed a life sentence and found him to be an aggravated sexual offender.

Petitioner filed a timely appeal, in which he raised the following assignments of error:

> 1.   Appellant's conviction is not supported by sufficient evidence.

> 2.   Appellant's conviction is against the manifest weight of the evidence.

*Id.* at *1.  On November 6, 2007, the appellate court affirmed the judgment of the trial court.

*Id.*  On March 12, 2008, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.

*State v. Hammond,* 117 Ohio St.3d 1426 (2008).

> During the pendency of the direct appeal, defendant filed a petition for postconviction relief pursuant to R.C. 2953.21, wherein he alleged ineffective assistance of counsel. Defendant claimed that he asked his counsel at trial to obtain an expert to investigate the issue of whether his medical history, including a history of head trauma, resulted in him having some type of psychological or behavioral impairment that rendered him prone to falsely confess. In connection with this postconviction petition, defendant filed motions for appointment of counsel and expert assistance. On February 5, 2008, the trial court denied defendant's postconviction petition filed pursuant to R.C. 2953.21, as well as his motions for appointment of counsel and expert assistance. Defendant appeals to this court from this judgment of the trial court.

*State v. Hammond*, No. 08AP-176, 2008 WL 4078422, *1 (Ohio app. 10th Dist. Sept. 4, 2008).

Petitioner raised the following assignments of error on appeal:

> 1. The trial court erred in denying Appellant's motion for

5

expert assistance.

2. The trial court erred by dismissing Appellant's petition for post-conviction relief without first holding a hearing on the merits.

*Id*. On September 4, 2008, the appellate court affirmed the trial court's judgment. *Id*. On February 4, 2008, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Hammond*, 120 Ohio St.3d 1426 (2008).

On March 16, 2009, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

1. Ineffective assistance of counsel: Trial counsel failed to hire an expert to evaluate Hammond for medical or behavioral history to collaborate his defense of false/coerced confession.

2. Insufficiency of evidence: Neither medical evidence nor Prosecuting Witness's testimony was sufficient to convict Hammond of rape. PW testified to facts inconsistent with penetration which is a necessary element of rape. No medical evidence supported a finding of penetration by a large grown man into a 5 year old girl. In Hammond's first out of court statement, Hammond stated that he merely showered his cousins and apologized for anything in appropriate. Therefore the evidence proferred was insufficient to support a conviction for rape.

3. Conviction against manifest weight of evidence: Hammond's first out of court statement is consistent with PWs in-court testimony that no rape occurred. Also, the lack of medical evidence of rape introduced into the record is consistent with Hammond's in-court testimony that he falsely confessed to the rape during police interrogation. Finally, PW was barely six years old when she testified and hardly credible.

6

Therefore, based on the above, the conviction is against the manifest with of the evidence.

4.  Ineffective assistance of counsel: Counsel at Trial, Direct appeal, and on appeal to Supreme Court was ineffective with respect to the following: Trial Counsel should have filed a Motion to suppress Hammond's second out of court statements because law enforcement overwhelmed Hammond with a prolonged interrogation and exposure to the case file which coerced Hammond into making a false confession; At best, Trial counsel should have proffered past medical evidence or lay witnesses testimony to head trauma and behavior into the trial record to support Hammond's mental state that he was prone to false confessions when overwhelmed by interrogation.

It is the position of the Respondent that Petitioner's claims are without merit or fail to present an issue appropriate for federal habeas corpus review.

## CLAIMS TWO AND THREE[1]

In claims two and three, Petitioner asserts that the evidence was constitutionally insufficient to sustain his conviction, and that his conviction was against the manifest weight of the evidence.  Petitioner's claim that his conviction was against the manifest weight of the evidence fails to present a claim appropriate for federal habeas corpus relief. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt.  *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir. 1983). In the context of a claim alleging

---

[1]  Because analysis of claims two and three provides a broader context for the entire case, the Court addresses them first.

a violation of due process, "sufficiency of the evidence" refers to the due process requirement that enough evidence was introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson,* 443 U.S. at 319; *Walker,* 703 F.2d at 969.

Under Ohio law, however, a claim that a verdict was against the manifest weight of the evidence – as opposed to one based upon insufficient evidence – requires the appellate court to act as a "thirteenth juror." The appellate court must review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982). Because a federal habeas court does not function as an additional state appellate court vested with the authority to conduct such an exhaustive review, any claim that Petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

Petitioner asserts that the evidence was constitutionally insufficient to sustain his conviction.  The state appellate court rejected this claim as follows:

> [A]ppellant contends that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.

Appellant was found guilty of rape pursuant to R.C. 2907.02, which provides, in pertinent part, as follows:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

* * *

(B) Whoever violates this section is guilty of rape, a felony of the first degree. * * * [I]f the victim under division (A)(1)(b) of this section is less than ten years of age, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.

"Sexual conduct" is defined in R.C. 2907.01(A), in pertinent part, as follows:

* * * [V]aginal intercourse between a male and female * * * without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal * * * opening of another. Penetration, however slight, is sufficient to complete vaginal * * * intercourse.

When presented with a sufficiency of the evidence argument, this court construes the evidence in favor of the prosecution and determines whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259. According to the state's evidence, R.F. was not appellant's spouse and she was under the age of ten. As to establishing "sexual conduct," R.F. testified that appellant's penis touched her vagina and that it sort of hurt. Further, the state presented both appellant's written confession and videotaped confession wherein he admitted that he had intercourse with R.F.

Construed in the state's favor, the above evidence was sufficient to allow the finding beyond a reasonable doubt that

appellant had violated R.C. 2907.02. Appellant's first assignment of error is overruled.

... [A]ppellant argues that the record is noteworthy for what it does not contain. Appellant points out that there is no medical evidence or scientific evidence submitted to substantiate the allegation of rape and that R.F. never testified that appellant actually put his penis inside her vagina. Although appellant does admit that his written and videotaped confessions present additional evidence of his guilt, appellant argues that his out-of-court statements are outweighed by his in court testimony which he asserts showed him to be an "unsophisticated defendant with no experience in the criminal justice system who, by his own account, was overwhelmed by the experience of interrogation." (Appellant's brief, 7.)

***

Appellant testified that he confessed to raping R.F. because he thought confessing was the right thing to do. No further explanation was provided. Obviously, the jury did not find this explanation to outweigh his written and videotaped confessions and the jury also accepted R.F.'s statements that the act did hurt.

... [A]ppellant's second assignment of error is overruled.

*State v. Hammond*, 2008 WL 4078422 at *1.

The factual findings of the state appellate court are presumed to be correct.  28

U.S.C. § 2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was

contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Court of Appeals for the Sixth Circuit recently summarized this standard:

> Under the "contrary to" provision, a federal habeas court should grant the writ "if the state court arrived at a conclusion 'opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Boykin v. Webb*, 541 F.3d 638, 642 (6th Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable applications" clause, a habeas court may grant the writ if the state court identified the correct legal principle from the Supreme Court's decisions but unreasonably applied that principle to the petitioner's case. *Id.*

*Raver v. Brunsman*, No.08-3098, 2010 WL 2545489, *3 (6th Cir. June 21, 2010). Petitioner has failed to meet this standard here.

11

In *Jackson v. Virginia,* 443 U.S. at 307, the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324.

As the Sixth Circuit has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of [the *Jackson v. Virginia* ] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). "First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state] Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA." *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008). *See also Parker v. Renico,* 506 F.3d 444, 448 (6th Cir. 2007); *Nash v. Eberlin,* 258 Fed.Appx. 761, 765

(6th Cir. 2007). This Court recognizes, however, that "even after AEDPA, [the Court] must 'distinguish reasonable speculation from sufficient evidence' when reviewing a state court's application of *Jackson.*" *Smith v. Romanowski,* 341 Fed.Appx. 96, 102-03 (6th Cir. 2009) (Moore, J., dissenting)(*quoting Brown v. Palmer,* 441 F.3d 347, 352 (6th Cir. 2006).)

Petitioner argues that the evidence was constitutionally insufficient to sustain his rape conviction because his confession was not credible, and the alleged victim failed to testify that penetration occurred. These arguments are not persuasive. This Court cannot assess the credibility of witnesses in reviewing a claim related to the sufficiency of evidence. To the contrary, the Court must view all of the evidence in the light most favorable to the prosecution. *See Jackson v. Virginia.* For the reasons detailed by the state appellate court, this Court agrees that, when doing so, taking into account all of the evidence, including but not limited to Petitioner's statement to police admitting his guilt, and R.F.'s testimony, the evidence was constitutionally sufficient to sustain Petitioner's conviction.

Claims two and three are without merit.

## CLAIMS ONE AND FOUR

In claim one, Petitioner asserts that he was denied effective assistance of counsel because his attorney failed to hire an expert to evaluate his medical and behavioral history to support his defense that he had been coerced into making a false confession to police.

The state appellate court rejected this claim as follows:

[D]efendant alleged in his petition that his counsel ignored his

13

> request to hire an expert to investigate whether, due to trauma to his head, he had a psychological or behavioral condition that rendered him more likely to falsely confess. In defendant's view, he set forth a colorable claim that he was denied effective assistance of counsel.
>
> Despite making this claim, defendant did not submit any evidentiary material to support it. In fact, defendant recognized in his petition that he had not submitted any evidentiary material in support of his claim, but asserted that the absence of such evidence would be remedied with the assistance of a psychologist. However, as determined above, defendant was not entitled to funding for an expert to assist him in developing his claim in the postconviction proceeding. Because defendant failed to submit any evidentiary material in support of his postconviction petition, it was not an abuse of discretion for the trial court to deny his petition without a hearing. ... Therefore, we overrule defendant's second assignment of error.

*State v. Hammond*, 2008 WL 4078422 at * 4 (citation omitted).  Again, the record fails to establish that the state appellate court's decision was contrary to, or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state courts. 28 U.S.C. § 2254(d); *Williams v. Taylor,* 529 U.S. at 412-13.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel.  *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance

14

> prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S.668, 687 (1984); *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 697. Because a petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that Petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

In support of his claim of ineffective assistance of counsel, Petitioner has attached medical records indicating he was admitted to Doctors North Hospital after having a seizure as a child, and had suffered a skull fracture one month previously. He has attached the results of his EEG at that time. Petitioner also has attached documents indicating he was seen at the hospital emergency room when he was 14 years old, and fractured his right femur in a dirt bike accident. He was on medication for a seizure disorder as a result of his head fracture, but the medication was discontinued after one year. Petitioner has attached

15

an affidavit from Emma L. Bogan, in which she indicates that he fell off a slide when he was approximately 6 years old and landed on his head.  Bogan states that Petitioner's step father used to beat him so severely he had welts on his legs and rear.  According to Bogan, Petitioner used to confess to things he didn't do because he didn't want his 2 younger brothers to get whipped like he had been beaten in the past.  *Affidavit of Emma L. Bogan at* ¶3.  He fell off his bicycle and hit his head on the sidewalk, which caused him to have seizures.  Bogan states that Petitioner took seizure medication for "years."  *Id.*  When he was 2 or 3 years old, he cried because he did not want to visit his biological father, who would whip him.  *Id.*  Additionally, Petitioner has attached an affidavit from Dr. Solomon Fulero, a psychologist and attorney, in which Fulero indicates that Attorney Regina Richards, Petitioner's defense counsel, retained him in September 2009 to review the facts surrounding Petitioner's statements to police.  Fulero concluded that several factors raised "serious questions about the reliability of [Petitioner's] July 12, 2006 confession and the knowing and intelligent nature of his waiver of *Miranda* rights."  Affidavit of Dr. Solomon Fulero at ¶7.  Fulero further asserts that there is an increasing recognition of false confessions resulting in wrongful convictions, and refers to the factors that may have resulted in a false confession in this case.  *Id.* at ¶¶8-22.

However, Petitioner provided none of the foregoing documents to the state courts in support of his state post conviction petition.  The United States Supreme Court has "made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  28

U.S.C. § 2254 (e) (2) limits a federal habeas court's ability to permit factual development.

That section provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (A) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In *Holland,* the Supreme Court held that the restrictions on factual development set forth in § 2254(e)(2) apply when a petitioner seeks to present new evidence not considered by the state courts, whether he seeks to present that new evidence through an evidentiary hearing or expansion of the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases.[2] 542 U.S. at 653.  The statute applies where a prisoner has

---

[2]  Rule 7 of the Rules Governing Habeas Corpus Cases provides:

(a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.

(b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath

'failed to develop the factual basis of a claim in State court proceedings.'" *Williams v. Taylor,* 529 U.S. at 430 (quoting § 2254(e)(2)). "If the prisoner failed to develop the facts, an evidentiary hearing cannot be granted unless the prisoner's case meets the other conditions of § 2254(e)(2)." *Id.*

Thus, when a Petitioner seeks to develop facts that the state courts did not consider and to have a federal court consider his constitutional claims in light of those new facts, the petitioner must demonstrate that he was not at fault for the failure to develop the facts underlying his claims. A petitioner is at fault for the failure to develop the facts if he failed, based on the evidence that was available to him, to exercise due diligence in developing and presenting that evidence. *Id.* at 432. Generally, a petitioner exercises due diligence if he requests an evidentiary hearing in the state courts in accordance with state law. *Id.* at 437; *see also Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001) (holding that the petitioner satisfied the diligence requirement by raising his claim in the appropriate forum and requesting a hearing that was never afforded by the state courts); *Jackson v. Anderson,* 141 F.Supp.2d 811, 828 (N.D. Ohio 2001) ("The Petitioner sought an evidentiary hearing in state court, which was denied, and thereby satisfied the diligence requirement of § 2254(e)(2).")

The record fails to reflect that Petitioner exercised due diligence in presenting his

---

to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

(c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

claim of ineffective assistance of counsel to the state courts.  The state appellate court explicitly refused to consider his off-the-record arguments, noting that such claims are not properly raised on direct appeal.  In Ohio, off-the-record claims are properly raised in post conviction proceedings, and not on direct appeal.  *See* O.R.C. § 2953.21.  Further, Petitioner failed to attach any of the documents he now submits in support of his claim of ineffective assistance of counsel in post conviction proceedings.  The state courts, therefore, dismissed such action, finding that it had no merit.

Petitioner contends that he was denied effective assistance of counsel in post conviction proceedings because his attorney failed to attach any documentary evidence in support of his claim of ineffective assistance of counsel and withdrew without so amending the pleadings or advising petitioner on how to do so.  *See Traverse*.  However, the Constitution does not entitle a petitioner to the effective assistance of counsel in post conviction proceedings.  *See Pennsylvania v. Finley,* 481 U.S. 555 (1987); *Jacobs v. Mohr,* 265 F.3d 407, 415 (6th Cir.2001).  Additionally, as noted by the United States District Court for the Western District of Michigan in *Terrell v. Berghuis*, Case No. 4:05-cv-108, 2009 WL 799082 at *18 (W.D. Mich. March 23 2009), "The test for "fail[ure] to develop" is defined as a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" in his or her attempts to discover and present a claim in the state court proceedings.  *McAdoo v. Elo,* 365 F.3d 487, 500 (6th Cir.2004) (citing *Williams,* 529 U.S. at 432)."

For all the foregoing reasons, petitioner has failed to establish that the state appellate

19

court's decision denying his claim of ineffective assistance of trial counsel is unreasonable so as to justify federal habeas corpus relief.  28 U.S.C. § 2254(d), (e); *Williams v. Taylor*, 529 U.S. at 412-13.

Claim one is without merit.

In claim four, Petitioner asserts that he was denied effective assistance of trial and appellate counsel because his attorney failed to file a motion to suppress his confession to police as coerced.  He also maintains that his attorney was ineffective because he failed to proffer past medical evidence or testimony of lay witnesses regarding his prior head trauma and the fact that he had made false confessions in the past.  Respondent does not appear to have addressed this claim in the Return of Writ.

Again, however, in raising a similar issue in State post conviction proceedings, Petitioner failed to support his claim with any of the documents he now presents in support of his position in these proceedings.  This Court, therefore, for the reasons already discussed, cannot now consider documents not presented to the state courts, in light of the conclusion that the record does not reflect that Petitioner acted diligently in developing the facts supporting his claim(s) in the state courts.  Therefore, this claim likewise lacks merit.

To the extent that petitioner now alleges that he was denied the effective assistance of counsel in proceedings before the Ohio Supreme Court, that claim provides no basis for federal habeas corpus relief, because Petitioner had no right to the constitutionally effective assistance of counsel in those proceedings. *Pennsylvania v. Finley,* 481 U.S. at 555; *Jacobs v. Mohr,* 265 F.3d at 415.

Petitioner also asserts the ineffective assistance of appellate counsel due to his attorney's failure to raise these same issues on direct appeal. It does not appear from the record that Petitioner presented this claim to the state courts. In any event, this claim likewise is plainly without merit, because, as previously discussed, off-the-record claims must be raised in post conviction proceedings, and not on direct appeal.

Therefore, claim four is without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,*

21

474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

_____
Elizabeth A. Preston Deavers
United States Magistrate Judge